Pamela **DRAKE** and Cheryl Harris, on behalf of herself and all others similarly situated, Plaintiffs,

v.

Samuel R. **PIERCE,** Jr., et al., Defendants.

No. C87–594R.

United States District Court, W.D. Washington.

April 14, 1988.

Yvette Hall War Bonnet, Gregory D. Provenzano, Evergreen Legal Services, Everett, Wash., for plaintiffs.

Anastasia Dritshulas, Asst. U.S. Atty., Joyce Moen, U.S. Dept. of Housing & Urban Development, Seattle Office, Region X, Seattle, Wash., for HUD et al.

R. Michael Kight, Ronald L. Castleberry, Newton, Kight, Novack, Hammer, Adams & Castleberry, Everett, Wash., for City, White, & Alkire.

Susan Riley, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for Pierce & Saether.

### ORDER GRANTING PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on two motions for partial summary judgment brought by plaintiffs Pamela Drake, individually, and Cheryl Harris, individually and as class representative. Plaintiffs move for summary judgment on their claims under the Administrative Procedure Act, 5 U.S.C. §§ 701–06 for declaratory and injunctive relief against defendants the United States Department of Housing and Urban Development ("HUD"), its Secretary, Samuel R. Pierce ("the Secretary"), and Harold E. Saether, an official of Region X (referred to collectively as "the federal defendants"). The federal defendants seek judgment in their favor on a cross-motion ·for summary judgment. Plaintiffs also move for partial summary judgment on the issue of liability on their civil rights claim brought pursuant to 42 U.S.C. § 1983 against the Housing Authority of the City of Everett ("Everett PHA"), its Executive Director, Allan L. White, and its Director of Rentals, Bud Alkire (referred to collectively as "the state defendants"). Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I

## INTRODUCTION

Plaintiff Pamela Drake originally brought this action both individually and as a class representative, alleging that she had been denied an admission preference to the Section 8 Existing Housing Program in violation of 42 U.S.C. § 1437f. Ms. Drake originally sought declaratory and injunctive relief, along with damages, costs, and attorney's fees from both the federal and state defendants. Because Ms. Drake moved out of state, she became ineligible for injunctive relief, and her class certification motion was denied.

On July 21, the court allowed Cheryl Harris to intervene as plaintiff, and on December 18, 1987, granted her motion for class certification. Two classes have been certified: (1) all very low-income families who applied or will apply for the Section 8 Existing Housing Program administered by the Everett PHA, and who either occupy substandard housing, pay more than fifty per cent of family income for rent, or are involuntarily displaced at the time they seek assistance; and (2) all very low-income families who fit one of the above categories and have applied or will apply for the Section 8 Existing Housing Program administered by a public housing agency in the State of Washington.

## II

## BACKGROUND

A. *Section 8 Existing Housing Program: Statutory Framework*

In 1974, Congress established the Section 8 Housing Program as part of the Housing

and Community Development Act, 42 U.S.C. § 1437f, which amended the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq. Section 8 of the revised 1937 Act authorizes a number of distinct programs to aid lower-income families in obtaining a decent place to live and to promote economically mixed housing. 42 U.S.C. § 1437f(a). To further this two-fold purpose, Congress sought *inter alia* to subsidize low-income families in the rental of existing housing under the Section 8 Existing Housing Certificate Program ("Certificate Program"), 42 U.S.C. § 1437f(b)(1), established in the 1974 Act, and the Section 8 Existing Housing Voucher Program ("Voucher Program"), established as part of the Housing and Urban–Rural Recovery Act of 1983, 42 U.S.C. § 1437f(*o* ).

Under the Section 8 Certificate Program, the Secretary enters into annual contributions contracts with Public Housing Authorities ("PHAs") to make housing assistance payments to owners of existing dwelling units on behalf of eligible low-income families. 42 U.S.C. § 1437f(b)(1). PHAs have responsibility for accepting applications, determining a family's eligibility, maintaining a waiting list, selecting participants, and issuing certificates to eligible families in accordance with HUD regulations. *See* 24 C.F.R. § 882.116.

PHAs must submit administrative plans for HUD approval, *see* 24 C.F.R. § 882.204(b)(3), and the plans must set forth the PHA's policies and procedures for "selecting families for participation in the PHA's Section 8 Program (including any selection preferences ...)." 24 C.F.R. § 882.204(b)(3)(ii). A PHA must select applicants for participation in Section 8 Existing Housing programs from its waiting list in accordance with its administrative plan. 24 C.F.R. § 882.206(b). Until 1979, a PHA had the authority to provide for prefer-

ences in selecting applicants, but was not required to do so. 24 C.F.R. §§ 882.2.-4(b)(3), 882.209. Preferences had to be included in a PHA's administrative plan and approved by HUD. *Id.*

In 1979, Congress mandated that PHAs give "preference to families that occupy substandard housing or are involuntarily displaced at the time they are seeking assistance." [1] In 1983, Congress added a third preference for families paying more than 50 per cent of family income for rent.[2] As a result of these amendments the federal statute governing the Certificate Program now provides:

> Contracts to make assistance payments entered into by a public housing agency with an owner of existing housing units shall provide (with respect to any unit) that
>
> (A) The selection of a tenant for such unit shall be the function of the owner, subject to the provisions of the annual contributions contract between the Secretary and the agency, except that the tenant selection criteria used by the owner shall give preference to families which occupy substandard housing, are paying more than 50 per centum of family income for rent, or are involuntarily displaced at the time they are seeking assistance under this section.

42 U.S.C. § 1437f(d)(1).

In the 1983 Act, Congress also established the Section 8 Voucher Program.[3] The statute allows the Secretary to authorize certain PHAs to conduct demonstration projects that use a voucher system, rather than a direct subsidy certificate. 42 U.S.C. § 1437f(*o* )(1). PHAs have virtually identical responsibilities under the Voucher and Certificate Programs, but the voucher system has a slightly different focus. In the Certificate Program, the tenant must find a landlord willing to rent a dwelling

**1.** Housing and Community Development Amendments of 1979, Pub.L. 96–153, Title II, § 206, 93 Stat. 1106, 1108–10 (December 21, 1979).

**2.** Housing and Urban–Rural Recovery Act of 1983, Pub.L. 98–181, Title II, § 203, 97 Stat. 1178, 1181–83 (November 30, 1983).

**3.** Housing and Urban–Rural Recovery Act of 1983, Pub.L. 98–181, Title II, § 207, 97 Stat. 1181 (November 30, 1983).

unit at a "gross rent" that does not exceed the applicable "fair market rent." 24 C.F. R. § 882.106. If successful, the selected family pays 30 per cent of its adjusted income as rent. In the Voucher Program, the family is not required to find a unit that rents within any rent limitations and may end up paying more or less than 30 per cent of its adjusted income for rent. Congress also mandated that the three statutory admission preferences also be used in the Voucher Program selection process. 42 U.S.C. § 1437f(o)(3).

Although Congress mandated statutory preferences for selection of Certificate Program families in 1979, and added a preference in 1983, HUD did not publish a final rule to implement the required preferences until January 15, 1988. 53 Fed.Reg. 1122 (Jan. 15, 1988). In each year from 1980 through 1984, HUD announced that it was preparing to publish a proposed rule to implement the statutory preferences.[4] On September 26, 1984, HUD finally published a proposed rule to implement the "statutory directive." 49 Fed.Reg. 37787 (1984). According to HUD, publication of a final rule required an additional three years to consider public comments. See 53 Fed. Reg. 1122–23 (Jan. 15, 1988). This final rule became effective March 4, 1988, 53 Fed.Reg. 6601, but PHAs have until July 13, 1988 to implement the congressionally mandated preferences in Certificate Program selection.

Preference implementation in the Voucher Program has not yet taken place. A proposed rule was published on August 14, 1987 (52 Fed.Reg. 30388). Although HUD expects the application of preferences in the Voucher Program to be "substantially similar" to the Certificate Program, implementation of the preferences will await the publication of final Housing Voucher Program regulations. 53 Fed.Reg. 1123 (Jan. 15, 1988). Just prior to issuance of this Order, HUD informed the court that a notice issued on March 28, 1988 required that implementation of the Voucher Program preferences occur in accordance with the Certificate Program's final rule.

In the absence of a rule implementing preferences in the Voucher and Certificate Programs, HUD took no action to implement the statutorily directed preferences. HUD entered into annual contribution contracts with PHAs in the State of Washington that did not provide the preferences. In so doing, HUD approved PHA Administrative Plans that did not provide admission preferences for qualified families. Currently, PHAs in the State of Washington do not provide all three admission preferences,[5] and HUD's position is that PHAs are not required to provide the preferences in the Certificate Program until July 13, 1988, and in the Voucher Program until a final rule becomes effective.[6]

## B. *Factual Background*

The following facts are not in dispute. Plaintiff Drake had been on the Everett PHA's waiting list for the Section 8 Existing Housing Program since November 25, 1986. Having been informed that the house she was living in would be sold on April 10, 1987, Ms. Drake claimed an involuntary-displaced-preference and on March 27, 1987, requested that the Everett PHA provide her with a preference on the waiting list. On April 8, 1987, defendant Bud Alkire rejected Ms. Drake's request in writing, maintaining that the preference requirements do not become effective until implemented by HUD rulemaking. After her residence was sold, Ms. Drake again requested a preference, and defendant Alkire again rejected this request, advising Ms. Drake that HUD had taken a position that in the absence of final rulemaking, the statutory preferences were not binding on the Everett PHA. On April 22, 1987, Ms. Drake filed this action.

---

**4.** *See* 45 Fed.Reg. 59063 (1980); 46 Fed.Reg. 41721 (1981); 47 Fed.Reg. 48427 (1982); 48 Fed.Reg. 18059 (1983); 49 Fed.Reg. 15926 (1984).

**5.** *See* Declaration of G. Provenzano (Jan. 28, 1988), Attachment B 7–8. The Everett PHA has informed the court that it has implemented the statutory preferences on an interim basis.

**6.** *See supra,* note 5.

Plaintiff-intervenor Cheryl Harris has been on the Everett PHA's Section 8 Existing Housing waiting list since January 10, 1986. Although Ms. Harris spends more than 50 per cent of her family income on rent within the meaning of 42 U.S.C. § 1437f(d)(1), the Everett PHA did not inform her that she qualified for an admissions preference and failed to give her a preference on its Section 8 waiting list.

Plaintiffs assert different claims against the various federal and state defendants. Against the federal defendants, plaintiffs seek declaratory and injunctive relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, and costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. Against the state defendants, plaintiffs seek declaratory and injunctive relief, damages, costs, and attorney's fees under 42 U.S.C. §§ 1983, 1988.[7]

### III

### PLAINTIFFS' AND FEDERAL DEFENDANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs seek a partial summary judgment on their claims against the federal defendants brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06. In their first claim, plaintiffs contend that the Secretary acted improperly in failing to implement the admission preferences required by 42 U.S.C. § 1437f. Plaintiffs seek a court order compelling the federal defendants to implement the admission preferences in the Certificate and Voucher programs without further delay. Second, plaintiffs contend that HUD unlawfully approved PHA administrative plans operating Section 8 Existing Housing Programs in the State of Washington that did not provide the statutory preferences to eligible families. Plaintiffs ask the court to set aside HUD's approval of all such administrative plans.

In opposing plaintiffs' summary judgment motion, the federal defendants do not dispute any facts and do not contend that plaintiffs' claims are not subject to judicial review. Because Congress did not commit preference implementation to HUD's discretion, the APA authorizes the court to review any final agency action, including a failure to act. 5 U.S.C. § 704; *see Clementson v. Brock*, 806 F.2d 1402, 1404 (9th Cir.1986). Rather, the federal defendants move for summary judgment in their favor on procedural grounds. They contend that plaintiffs' claims as to the Certificate Program have been rendered moot by HUD's issuance of a final regulation effective March 4, 1988. As to the claims under the Voucher Program, the federal defendants argue that the issue is not properly before the court because plaintiffs did not expressly invoke 42 U.S.C. § 1347f(*o*)(3) in their complaint. Even if the court considers the Voucher Program preference issue, the federal defendants contend that the Certificate Program's final rule also renders plaintiffs' voucher challenge moot.

### A. *Procedural Contentions*

■ The court finds the federal defendants' procedural contentions without merit. Under certain circumstances "newly promulgated administrative regulations can have the effect of mooting a previously viable case." *Alabama Hosp. Ass'n v. Beasley*, 702 F.2d 955, 961 (11th Cir.1983). However, the federal defendants have the "heavy" burden of demonstrating mootness by showing (1) that there is no reasonable expectation that the alleged violation will recur, *and* (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

Here, HUD acknowledges that under the final rule PHAs in the State of Washington need not give the statutory admission preferences in the Certificate Program until July 13, 1988, and that the tenant selection criteria contained in already approved ad-

---

7. Having dropped her claims for declaratory and injunctive relief and for damages, Ms. Drake seeks only costs and attorney's fees. Only Ms. Harris seeks monetary damages, and she does so in her individual capacity, rather than as class representative.

ministrative plans continues in force until PHAs implement the final rule. By delaying implementation of the final rule until July 13, 1988, HUD allows PHAs to continue offering certificates to families who do not qualify for a statutory preference ahead of those that do qualify. Even assuming, as the federal defendants contend, that the delay until July 13 may be necessary for administrative reasons in the case of large PHAs such as in New York City, PHAs in the State of Washington do not have prohibitively long waiting lists. *See* Declaration of Gregory Provenzano, Attachment B. Because HUD's final rule does not provide plaintiffs with complete relief from the effects of the alleged violation, plaintiffs' Certificate Program claims have not been rendered moot.

With respect to the Voucher Program, the court also finds that a decision on the merits is called for. The court rejects the assertion that the final rule with regard to the Certificate Program moots plaintiffs' Voucher Program claim. As noted earlier, HUD has informed the court that a March 28th Notice now requires implementation of the Voucher Program preferences. Nevertheless, because preference implementation need not occur until July 13, 1988, plaintiffs' Voucher Program claims are not moot.

Furthermore, the court is unpersuaded by the federal defendants' narrow application of the Federal Rules of Civil Procedure. Under the federal rules, a failure at the pleading stage to specifically cite the Voucher Program provision, 42 U.S.C. § 1437f(*o*)(3), does not bar the court from considering a valid claim unless to do so would prejudice defendants in maintaining a defense on the merits. *Mir v. Fosburg,* 646 F.2d 342, 347 (9th Cir.1980). Here, no prejudice would result. The relevant statutes have nearly identical language, PHAs operate the Voucher and Certificate Programs together, and during discovery plaintiffs made it clear that their claim included preferences under both the Certificate and Voucher programs.

Having found that plaintiffs' claims under the Certificate Program have not been rendered moot, and that it is appropriate to consider the Voucher Program challenge, the court finds no impediment to considering the merits of plaintiffs' claims for declaratory and injunctive relief.

### B. *Plaintiffs' APA Claims*

Plaintiffs contend that the statutory preferences in both the Certificate Program, 42 U.S.C. § 1347f(d)(1), and the Voucher Program, 42 U.S.C. § 1347f(*o*)(3), are self-executing and that the federal defendants acted unlawfully in refusing to implement these preferences until completion of final rulemaking. Consequently, plaintiffs ask the court to act pursuant to 5 U.S.C. § 706(1) and compel HUD to implement the preferences immediately, according to a court imposed timetable. Plaintiffs also ask the court to act pursuant to 5 U.S.C. § 706(2) and set aside HUD approval of PHA administrative plans that do not provide the statutory preferences. Because there are no disputes as to genuine issues of material fact and the issues presented involve construction of statutes and legislative history, it is appropriate for the court to rule on plaintiffs' claims on a summary judgment motion. *Smith v. Califano,* 597 F.2d 152, 155 n. 4 (9th Cir.1979); Wright, Miller, & Kane, *Federal Practice and Procedure* Civil 2d § 2725 at 82–93 (1983).

In creating statutory preferences in 1979 and again in 1983, Congress sought to ensure that, during a time of reduced funding, the limited number of housing certificates and other available housing assistance be provided to the families having the most "urgent" and "greatest" housing needs. *See* H.Conf.Rep. No. 96–706, 96th Cong. 1st sess. 55, *reprinted in* 1979 U.S. Code Cong. & Ad.News ("USCCAN") 2317, 2414; S.Rep. No. 98–142, 98th Cong. 1st Sess. 3, *reprinted in* 1983 USCCAN 1768, 1802–03. The language and legislative history of 42 U.S.C. §§ 1437f(d)(1) (Certificate Program preferences) and (*o*)(3) (Voucher Program preferences) manifestly demonstrate that Congress intended immediate implementation. Despite Congress' concern with families having *urgent* housing

needs, HUD took almost nine years to promulgate a final rule implementing the preferences in the Certificate Program and has delayed full implementation of that final rule an additional six months. HUD also acknowledges that five years after Congress created the Voucher Program no final rule had been promulgated implementing the mandatory statutory preferences. *See* 53 Fed.Reg. 1123 (Jan. 15, 1988).[8]

Given the clear mandate in the statutes themselves and the legislative history, the federal defendants had a duty to implement the statute without delay. *See United States v. Markgraf,* 736 F.2d 1179, 1182 (7th Cir.1984) (citing *Rank v. Nimmo,* 677 F.2d 692, 701 (9th Cir.1982) *cert. denied,* 459 U.S. 107, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982)). As the court explains *infra,*[9] Congress made the preferences self-executing, and HUD could have insured their immediate implementation by requiring PHAs to reflect the Congressional preferences in administrative plans and annual contribution contracts. Even assuming, as the federal defendants argue, that rulemaking was required because Congress did not indicate how the preferences were to be implemented, HUD could have taken interim action as it has done in other contexts, and required PHAs to comply with Congressional requirements during the rule-making process.[10] HUD's failure to take any interim action to implement the mandatory statutory preferences is highlighted by the broad discretion the final rule affords PHAs to develop their own definitions of the three preference categories and their own verification procedures. *See* 53 Fed. Reg. 1131.

Whatever discretion HUD may have had in promulgating rules to implement the statutory preferences, a five year delay in the case of the Voucher Program and an almost nine and one half year delay in the Certificate Program runs totally contrary to Congress' purposes and impermissibly abuses that discretion. *See Pulido v. Heckler,* 758 F.2d 503, 507–08 (10th Cir. 1985) (four year delay in promulgation of Social Security regulations constituted abuse of discretion). As noted above, the federal defendants cite administrative concerns arising out of excessively long waiting lists to support the reasonableness of allowing PHAs an additional six months to implement the Certificate Program preferences. Besides the inapplicability of this concern to PHAs in Washington State, the final rule itself already makes allowance for any difficulties in implementation caused by the number of applicants presently on a waiting list.[11]

HUD compounded its unlawful delay in implementation by failing to take any interim action implementing the statutory preferences. During the nine years since Congress mandated the preferences, HUD made no attempt to implement the statutory preferences by interim notices or by including appropriate language in PHA annual contribution contracts. As part of its failure to act, HUD consistently approved PHA administrative plans that ignored the statutory preferences. In the case of the Everett PHA, HUD informed defendant White that the PHA need not implement

---

**8.** Final implementation of the Voucher Program preferences is now set for July 13, 1988, along with the Certificate Program.

**9.** *See* Section IV. A of this Order.

**10.** In taking over 2 years to promulgate regulations implementing legislation allowing certain elderly and handicapped tenants to have pets, HUD issued administrative notices advising owners and PHAs that the statutory requirements were self-executing and had to be complied with during rulemaking. *See* 51 Fed.Reg. 43270 (Dec. 1, 1986) (referring to HUD Notice 84–10 (Feb. 28, 1984) and HUD Notice H–86–22 (Aug. 22, 1986)).

**11.** For example, where universal notice is made impracticable by the length of the waiting list, the final rule does not require notification to all listed families when there is an adequate pool of applicants likely to qualify for a preference. 53 Fed.Reg. 1136–37. Although HUD argues that PHAs need time to verify and certify applicant preference qualifications, the final rule allows for a two step process whereby families need only certify their eligibility for a preference upon receiving notice, with actual verification not taking place until the PHA is ready to issue the Certificate of Family Participation. *Id.* at 1139–40, 1153.

the preferences until a final rule became effective and binding. Letter From Joyce Moen to Allan White, April 20, 1987. In addition, the federal defendants continue to argue that the statutory preferences were not self-executing.

The court finds the federal defendants' position somewhat puzzling given that, in December of 1986, HUD maintained it was advising PHAs "that the statute speaks for itself and that their administrative plans should include the statutory preferences." Letter of Thomas Greelish to the Honorable Dickinson R. Debevoise, December 16, 1986 (Plaintiffs' Memorandum in Support, Attachment B). The federal defendants' position becomes even more incomprehensible given Judge Debevoise's decision in *Moya v. Board of Commissioners of the Housing Authority of Jersey City,* Civil No. 86–1994 (D.N.J. February 24, 1987) (Plaintiffs' Memorandum in Support, Attachment A), in which HUD was a third-party defendant. There, Judge Debevoise held that the preferences were both mandatory and self-executing, even in the absence of HUD final regulations. *Moya,* slip op. at 6–7.[12]

Given Congress' clear intention to provide preferences to those in urgent need, the court cannot allow the federal defendants to continue a course of conduct that nullifies Congress' unmistakable intention to have the preferences be self-executing.[13] Continued delay in the implementation of the preferences in the Voucher and Certificate Programs unquestionably perpetuates a violation of congressional intent—housing assistance will continue being provided under administrative plans that do not provide the admission preferences required by 42 U.S.C. §§ 1437f(d)(1) and (o)(3). Because the court finds that these statutes are self-executing, HUD's approval of

these administrative plans constituted unlawful agency action.

The court concludes that plaintiffs are entitled to summary judgment on their APA claims, and the court will fashion declaratory and injunctive relief pursuant to its authority under 5 U.S.C. § 706(1) (compelling agency action unreasonably delayed) and 5 U.S.C. § 706(2)(A) (setting aside unlawful agency action). Because of the history of delay, the court determines that establishment of a timetable is " 'an appropriate procedure for exercise of the court's equity powers to vindicate the public interest.' " *Pulido,* 758 F.2d at 508 (citation omitted).

## IV

### PLAINTIFFS' SECTION 1983 CLAIM

Plaintiffs claim that their civil rights under 42 U.S.C. § 1983 were violated by the state defendants when the Everett PHA denied them preferences under the Section 8 Existing Housing Program, 42 U.S.C. §§ 1437f(d)(1)(A) and (o)(3). They seek declaratory and injunctive relief only on behalf of Ms. Harris and the class consisting of preference-qualified families who applied or will apply for the Section 8 Existing Housing Program administered by the Everett PHA.[14] Plaintiffs move for summary judgment on the issue of liability alone.

The state defendants oppose plaintiffs' summary judgment on both factual and legal grounds. According to the state defendants, a factual issue exists as to whether the individual plaintiffs would have received housing assistance even had they been afforded a statutory preference. Affidavit of Bud Alkire ¶ 10. The court concludes that resolution of this factual dispute pertains to the issue of damages,

---

**12.** As in *Moya,* the court rejects the notion that PHAs need not have implemented the statutory preferences because the language used in 42 U.S.C. 1437f(d)(1) requires "owners" to give the preferences. PHAs have long had the authority to impose other preferences. Moreover, in the Section 8 Existing Housing Program it is the PHA that actually selects participants. Congressional intent can not be carried out unless PHAs are required to afford the preferences. The court finds HUD's argument to the contrary in

conflict with HUD's final rule, which equates PHAs with project owners for the purposes of the preference requirement. 53 Fed.Reg. 1122.

**13.** *See infra* Section IV A.

**14.** Plaintiffs seek monetary damages only on behalf of Ms. Harris, and Ms. Drake has limited her claim to costs and attorney's fees.

not liability. The court may enter summary judgment on the question of liability despite a genuine dispute over damages. Fed.R.Civ.P. 56(c).[15] Because there are no genuine issues of material fact, summary judgment is appropriate only if the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–631 (9th Cir.1987).

In arguing that plaintiffs are not entitled to judgment as a matter of law, state defendants raise two legal issues: (1) whether the section 1437f admissions preferences constitute rights enforceable under 42 U.S.C. § 1983; and (2) whether the individual defendants are shielded from liability under § 1983 by their good faith reliance on HUD's advice that the preferences were not self-executing.

A. *Rights Enforceable Under Section 1983*

■■■■ Section 1983 is available to citizens as a remedy for violations of federal statutes under the color of state law. *Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–06, 65 L.Ed.2d 555 (1980). The Supreme Court has recognized two exceptions to the application of § 1983 to remedy infringements on statutory rights: (1) where Congress has foreclosed private enforcement of the statute in the enactment itself; and (2) where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983. *Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981); *Middlesex County Sewage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). Recent decisions by the Supreme Court and the Eleventh Circuit hold that nothing in the Housing Act of 1937 evidences an intent to foreclose enforcement actions under

§ 1983. *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 771–74, 93 L.Ed.2d 781 (1987) (concerning rent limitations imposed by the Brooke Amendment to the Housing Act (42 U.S.C. § 1437a)); *Gholston v. Housing Authority of City of Montgomery,* 818 F.2d 776, 780 (11th Cir.1987) (concluding that *Wright* applied to Section 8 Existing Housing admission preferences).

Thus, the issue here concerns whether the statutory preferences contained in 42 U.S.C. §§ 1437f(d)(1) and (*o*)(3) "are sufficiently specific and definite to qualify as enforceable rights under *Pennhurst* and § 1983." *Wright,* 107 S.Ct. at 775. To determine whether a statute creates enforceable rights, the key question is Congress' intent. *Middlesex County Sewerage,* 453 U.S. at 13, 101 S.Ct. at 2622. The court must look to the statutory language and legislative history to determine whether the preferences are mandatory, rather than precatory, *see Pennhurst,* 451 U.S. at 19, 101 S.Ct. at 1541, and whether Congress enacted the preferences for the benefit of the plaintiff or plaintiff class. *See Wright,* 107 S.Ct. at 774. Based on the following review of the statutory language and legislative history, the court agrees with plaintiffs that the statutory admission preferences create "rights" enforceable under § 1983.

Undoubtedly, Congress intended to make the preferences mandatory. In the case of the Voucher Program, Congress required that families falling within the three statutory categories "shall be given" preference. 42 U.S.C. § 1437f(*o*)(3). In the case of the Certificate Program, Congress made the selection of tenants subject to the annual contributions contract between the Secretary and the Everett PHA *"except* that the tenant selection criteria used by the owner shall give preference" to the three

---

**15.** The court notes that some question exists as to Ms. Drake's actual eligibility for a statutory preference as an "involuntarily" displaced person because she may have knowingly moved into a home that was being foreclosed. Affidavit of Bud Alkire ¶ 6. Defendants, however, do not raise this issue in opposing summary judgment. In any event, because defendants denied Ms. Drake a preference based on HUD's failure to implement the preferences through final rulemaking, not on her alleged ineligibility, and because Ms. Drake has dropped her claim for damages and only seeks to recover costs and attorney's fees, her potential ineligibility has no relevance.

statutory categories. 42 U.S.C. § 1437f(d)(1)(A). The only fair reading of the statutory language leads to a conclusion that Congress intended the preferences to be mandatory rather than precatory. *See Gholston,* 818 F.2d at 786 n. 11 (characterizing the language in § 1437f(d)(1)(A) as "mandatory language"). However, the more difficult issue is whether the preferences are self-executing, that is, whether Congress intended that PHAs implement the mandatory preferences in the absence of HUD regulations.

The state defendants contend that the complexity of HUD's proposed and final rules demonstrate that the preferences could not have been implemented by individual PHAs, but rather required a detailed, deliberate process of policy making and implementation procedures. The court disagrees and concludes that congressional intent underlying the statutory preferences could have been implemented without further interpretation or guidance from HUD.

PHAs have long had the authority to provide for preferences in the Section 8 selection process by including such preferences in their administrative plans, subject only to approval by HUD. 24 C.F.R. §§ 882.204(b)(3) and 209(a)(3)–(4). The Everett PHA has exercised its authority to adopt a number of preferences.[16] PHAs could have implemented the statutory preferences by adopting their own definitions and submitting them to HUD for approval. In fact, HUD's final rule implementing the Certificate Program preferences grants PHAs wide discretion in formulating definitions for the three statutory preferences. 53 Fed.Reg. 1122, 1152–53 (Jan. 15, 1988).

Use of mandatory language such as "shall give preference," and the fact that Congress made the statutory preferences binding regardless of the terms of HUD contribution contracts, demonstrate that Congress intended to make the preferences mandatory *and* self-executing. In contrast, when Congress mandated that the same preferences be applied in publicly

---

16. *See* Interrogatory No. 9, attached to plaintiffs' Motion for Partial Summary Judgment,

owned housing, it expressly made implementation by PHAs subject to "such procedures and requirements as the Secretary may prescribe." 42 U.S.C. § 1437d(c)(4)(A). In *Gholston,* the Eighth Circuit characterized the § 1437d(c)(4)(A) language as permissive when compared with the "mandatory language" of the Section 8 Existing Housing Program preferences at issue in this case. 818 F.2d at 786 n. 11.

The mandatory nature of the PHAs' responsibility becomes even clearer when viewed in light of Congress' express requirement that PHAs and other entities making assistance payments under the Certificate and Voucher Program do so "in accordance with the provisions of [section 1437f]." 42 U.S.C. § 1437f(a). In addition, the Everett PHA's annual contribution contract with HUD for the Section 8 Existing Housing Program expressly requires the PHA "to comply, and to require owners to comply, with the U.S. Housing Act of 1937 ... including any amendments or changes in the Act." *See* Attachment C ¶ 2.1(A), Declaration of G. Provenzano.

The court is sensitive to the Everett PHA's desire for guidance from HUD and its reliance on HUD's advice that the preferences need not be implemented until final rulemaking was complete. Nevertheless, HUD actions cannot abrogate the PHAs' responsibility to abide by a Congressional mandate. *See e.g., Martinez v. Rhode Island Housing and Mortgage Finance Corp.,* 738 F.2d 21, 26 (1st Cir.1984) (state agency cannot avoid liability based on HUD regulations totally at odds with current law). Furthermore, the court agrees with the United States District Court for New Jersey, which reasoned that

> "[t]he absence of [HUD final] regulations does not give [PHAs] free reign to disregard the statutory preferences. To allow [PHAs] to do so would effectively render these mandatory statutory preferences a nullity."

Feb. 5, 1988.

*Moya,* slip op. at 6–7.[17] The position adhered to in this case by HUD and the Everett PHA, that the Everett PHA could ignore the statutory preferences until HUD promulgated a final rule, directly conflicts with the Congressional intent to make the preferences self-executing. *Moya,* slip op. at 8.

Having found the preferences to be both mandatory and self-executing with respect to the Everett PHA, the court also concludes that Congress mandated preferences in both the Certificate and Voucher Programs to benefit the plaintiffs and plaintiff classes, families that Congress perceived to be in the greatest need of housing assistance. *See e.g.,* S.Rep. No. 98–142, 98th Cong. 1st Sess. 3, *reprinted in* 1983 USCCAN 1768, 1802–03. Defendants argue that Congress did not intend to grant the class of Section 8 applicants a "right" to receive housing assistance and cite in support *Hill v. Group Three Housing Development Corp.,* 799 F.2d 385 (8th Cir. 1986). However, *Hill* has no relevance in this case. There, the Eighth Circuit was concerned with a private enforcement action against a private owner who exercised his discretion to reject particular Section 8 applicants. 799 F.2d at 387, 394. Here, plaintiffs claim not a right to assistance *per se,* but rather a right to a preference in the assistance admission process. In any event, the reasoning and result in *Hill* run contrary to the law in this circuit. *See Ressler v. Pierce,* 692 F.2d 1212, 1214–16 (9th Cir.1982) (holding that applicants at a privately owned Section 8 Housing project had a constitutionally protected interest).

### B. *Good Faith Reliance*

On the issue of individual liability for monetary damages, defendants White and Alkire contend that they are shielded from civil liability by their good faith reliance on HUD's interpretation of the Everett PHA's responsibilities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (recognizing partial immunity for conduct did not violate clearly established statutory or constitutional rights of which a reasonable person should have knowledge). The court acknowledges that the individual plaintiffs acted in good faith reliance on HUD. Nevertheless, defendants White and Alkire can not avail themselves of the good faith defense because plaintiffs have sued them in their official governmental capacities, rather than their individual capacities. *See Rollins by Agosta v. Farmer,* 731 F.2d 533, 536 (8th Cir.1984) (the *Harlow* good faith immunity does not apply when municipal officials are sued only in their official capacity).

### CONCLUSION

Having found that Congress intended to create mandatory and self-executory admission preferences in both the Section 8 Existing Housing Certificate and Voucher Programs, the court concludes that the federal defendants acted improperly by approving Section 8 Existing Housing Program administrative plans that do not implement the statutory preferences and by unreasonably delaying rulemaking that HUD considered necessary for preference implementation. Consequently, the court concludes that plaintiffs are entitled to summary judgment on their APA claims under 5 U.S.C. §§ 706(1) and (2)(A), and the court will fashion relief accordingly.

As to plaintiffs' claims against the state defendants, the court concludes that Congress created enforceable and self-executing rights in the statutory preferences contained in 42 U.S.C. § 1437f(d)(1)(A) and (*o*)(3) and that Congress did not foreclose private enforcement of the statutory preferences. Therefore, the Everett PHA's failure to implement the statutory preferences subjects it to liability under 42 U.S.C. § 1983. *See Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). The court concludes that plaintiffs are entitled to summary judgment on the issue of

---

**17.** Although HUD had assured the court in *Moya* that it had informed the PHA that the preferences were self-executing, HUD's position did not play a crucial role in the court's reasoning. *Moya,* slip op. at 7–8.

liability. As to Ms. Harris' monetary damages, further proceedings are required.

In as much as the Everett PHA has already taken interim steps to implement the statutory preferences, it appears that it is unnecessary for the court to order declaratory and injunctive relief against the state defendants. Under the "Everett Interim Preference Plan", the Everett PHA has adopted HUD's proposed definitions for the three statutory preferences, and now will not issue a certificate or a voucher to waiting list families unless they qualify for a statutory preference.

IT IS NOW, THEREFORE, ordered as follows:

(1) Plaintiffs' partial summary judgment motion on their APA claims against the federal defendants is GRANTED and the court orders defendant Harold E. Saether, Director of HUD Region X's Office of Public Housing, to cause a notice, accompanied by a copy of this Order, to be sent within three (3) working days of receiving this Order to each PHA in the State of Washington and to the court. Said notice shall contain the language set out in Attachment A affixed to this Order and HUD shall take any and all actions necessary to effectuate the notice requirements.

2) Plaintiffs' motion for summary judgment on the issue of liability on its 42 U.S.C. § 1983 claim against the state defendants is GRANTED.

IT IS SO ORDERED.

### Attachment A

On April 14, 1988, an order was issued by Judge Barbara J. Rothstein, Chief Judge of the United States District Court for the Western District of Washington in the case of *Drake v. Pierce*, which concerned claims against HUD and the Everett Housing Authority. The Order requires HUD to implement *immediately* the statutory preferences enacted by Congress for the Section 8 Existing Housing Certificate Program (42 U.S.C. § 1437f(d)(1)(A)), and the Section 8 Existing Housing Voucher Program (42 U.S.C. § 1437f(*o*)(3)). A copy of that Order is attached to this Notice. In the Order, the court concludes that the statutory preferences in the Housing Certificate Program and Housing Voucher Program were both mandatory and self-executing and therefore, had to be implemented regardless of HUD's failure to promulgate a final rule until March 4, 1988.

The court further concluded that, by failing to afford eligible families the statutory preferences, the Everett PHA acted unlawfully and in violation of ¶ 2.1(A) of its Annual Contributions Contract with HUD for the Section 8 Existing Housing Program, which expressly requires the PHA "to comply, and to require owners to comply, with the U.S. Housing Act of 1937 ... including any amendments or changes in the Act." Consequently, the court found the Everett PHA liable for civil damages, costs, and attorney's fees under 42 U.S.C. § 1983 for denying eligible families their statutory right to a preference. In addition, the court ruled that HUD acted improperly in approving Section 8 Existing Housing Program administrative plans that do not implement the statutory preferences and by unreasonably delaying rulemaking.

Pursuant to the court's Order, HUD hereby instructs each Public Housing Agencys or Authorities in the State of Washington to *immediately suspend* the distribution of Section 8 Existing Housing Certificates and Vouchers until such time as a PHA either conforms to HUD's final regulations implementing the statutory preferences or implements a plan that conforms with the "Everett Housing Authority's Interim Preference Plan." Under the Everett Plan, a PHA must adopt the proposed definitions for the statutory preferences contained in HUD's final order implementing the Certificate Program preferences, 53 Fed.Reg. 1122 (Jan. 15, 1988). The PHA then may issue certificates and vouchers only to families on its waiting list that qualify for one of the statutory preferences. Also pursuant to the court's Order, HUD further instructs you that each PHA must afford the statutory preferences either pursuant to HUD's final rule or pursuant to a plan conforming to the Everett Plan by no later than May 15, 1988.

Adoption of the Everett Plan is of course only an interim step in preference implementation. Each PHA still has the responsibility for complying with HUD's final regulations published at 53 Fed.Reg. 122 (Jan. 15, 1988) by July 13, 1988.